The STATE of Texas, Appellant,

v.

Joseph Frank BASSANO, III, Appellee.

No. 13–90–505–CR.

Court of Appeals of Texas, Corpus Christi.

March 19, 1992.

Discretionary Review Refused June 24, 1992.

George J. Filley, III, Dist. Atty., Michael M. Kelly, Asst. Dist. Atty., Victoria, for appellant.

Bernard T. Klimist, Victoria, for appellee.

## OPINION

SEERDEN, Justice.

An information charged appellee, Joseph Frank Bassano, III, with possession of more than two ounces, but not more than four ounces, of marihuana. He filed a motion to suppress all of the evidence which was seized from his house and from a car parked on his house's driveway. After a hearing, the trial court denied the motion to suppress the evidence seized from his house, but granted the motion to suppress the evidence seized from the car. The State appeals by two points of error. We affirm.

At the motion to suppress hearing, Officer Thomas J. Turner of the Victoria County Sheriff's Office testified that a confidential informant reported to the sheriff's office that the persons living in a house at 805 Sundance Street, Victoria, Texas, were selling marihuana out of that house. Appellee owned this house, and he and his wife, Kimberly Bassano, lived there. Officers Turner and Seger began their surveillance of the house about 5:00 p.m. on July 23, 1990. Officer Turner left and obtained a search warrant, and it was signed at 5:16 p.m. that day. Officer Turner then returned to the house and observed it until about 6:20 p.m., when officers Turner and Seger drove past the house and stopped at a point just beyond the next intersection south of the house. From the time they began their surveillance until about 6:25 p.m., they did not see any vehicles in the house's driveway, nor did they see any activity around the house. About 6:25 p.m., Officer Turner saw an Oldsmobile parked in the house's driveway. He did not see the Oldsmobile arrive at the house, nor did he see anybody inside of it. He kept the Oldsmobile under surveillance until 6:33 p.m. No one was seen near the Oldsmobile from 6:25 p.m. to 6:33 p.m. At 6:33 p.m., Officers Turner and Seger, along with other officers, executed the search warrant. Officers Turner and Seger met appellee at the front door of the house. He was given his *Miranda* [1] warnings and was detained in the living room during the search. Officer Turner searched the Oldsmobile and found a 1.25 gallon cooler inside the trunk. A clear plastic baggy containing a green leafy substance suspected of being marihuana was inside the cooler. A

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

partially smoked cigarette containing suspected marihuana was found on the Oldsmobile's console. Appellee was arrested for possession of marihuana.

Appellee's motion to suppress alleged, in relevant part, that the search of the Oldsmobile violated the Fourth Amendment of the United States Constitution and Article 1, § 9 of the Texas Constitution because it was conducted pursuant to an invalid search warrant. The motion alleged that: the affidavit upon which the search warrant was based was insufficient; the search of the Oldsmobile was not conducted pursuant to a valid search warrant; there was reasonable doubt, as a matter of law, that appellee possessed any contraband found inside the Oldsmobile; and the informant lacked credibility. The trial court granted the motion to suppress all of the evidence seized from the Oldsmobile.

■ By point one, the State complains that the trial court erred in sustaining the motion to suppress the evidence of marihuana found in the Oldsmobile because appellee did not have standing to contest the search of that vehicle.[2] Generally, the right to challenge the lawfulness of a search is limited to persons with "standing," that is, to those who have been aggrieved by a search and seizure. *Goehring v. State,* 627 S.W.2d 159, 164 (Tex.Crim. App.1982). When a search is contested, the accused establishes standing, *viz:* his right to complain of the search, by showing that he had a reasonable expectation of privacy in the area searched. *Chapa v. State,* 729 S.W.2d 723, 725–29 (Tex.Crim. App.1987). A mere allegation by an accused that he was a victim of an illegal search or seizure, if not disputed by the State, is sufficient to establish standing to challenge a search or seizure. *Russell v. State,* 717 S.W.2d 7, 9 n. 6 (Tex.Crim.App. 1986). Once the State challenges the allegation, the accused carries the burden of proof. *Russell,* 717 S.W.2d at 9 n. 6.

In *Chapa,* the Court of Criminal Appeals announced the standard for determining whether an individual has a reasonable or legitimate expectation of privacy:

In *Rakas v. Illinois,* supra [439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387], the substantive question of what constitutes a "search" for purposes of the Fourth Amendment was effectively merged with what had been a procedural question of "standing" to challenge such a search. It became a matter, not only of whether some "reasonable," "justifiable" or "legitimate expectation of privacy" in a particular place exists, which has been breached by governmental action, *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979), but also of *who* reasonably, justifiably or legitimately harbored that expectation. The litmus for determining existence of a legitimate expectation of privacy as to a particular accused is twofold: first, did he exhibit by his conduct "an actual (subjective) expectation of privacy[;]" and second, if he did, was that subjective expectation "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland,* 442 U.S. at 740, 99 S.Ct. at 2580, 61 L.Ed.2d at 226–27.

*Chapa,* 729 S.W.2d at 727. The United States Supreme Court in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), explained the first inquiry in *Rakas* as whether "the individual has shown that 'he seeks to preserve [something] as private.'" *Smith,* 442 U.S. at 739, 99 S.Ct. at 2580. The *Smith* court explained the second inquiry in *Rakas* as whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Smith,* 442 U.S. at 739, 99 S.Ct. at 2580.

Here, appellee owned the house at 805 Sundance Street, and he and his wife, Kimberly, lived there. The Oldsmobile, which was registered to Kimberly, was parked in the house's driveway at the time the search warrant was executed. The suspected

---

2. Appellee's standing was raised during the hearing on the motion to suppress. While appellee's counsel had Officer Turner on direct examination, counsel requested the State to stipulate to standing. The State replied that it would not.

marihuana was in a cooler which was inside the Oldsmobile's trunk. Appellee had, under Texas community property laws, a possessory right of use and control of his wife's Oldsmobile. This right of possession, combined with the fact that the suspected marihuana was found in a cooler inside the Oldsmobile's trunk, showed that appellee sought to preserve the suspected marihuana as private and that his expectations, viewed objectively, were justifiable under the circumstances. The State argues that appellee lacks standing because, according to Officer Turner's hearsay statement, appellee said that the Oldsmobile belonged to his wife and that any marihuana found inside of it belonged to her. However, in *Chapa, supra,* the Court of Criminal Appeals stated that an accused's failure to assert ownership in contraband is relevant to a challenge of its seizure, but when, as in this case, the accused challenges the search, of which the contraband was a fruit, so long as he establishes a reasonable expectation of privacy in the area searched, he has shown standing. *Chapa,* 729 S.W.2d at 725–26 n. 1. We hold that appellee established a reasonable expectation of privacy in the contents of the 1.25 gallon cooler, and, therefore, has standing to challenge the search of his wife's Oldsmobile. Point one is overruled.

■ By point two, the State complains that the trial court erred in sustaining appellee's motion to suppress the evidence found in the Oldsmobile because the search was conducted pursuant to a valid search warrant. In *State v. Barnett,* 788 S.W.2d 572 (Tex.Crim.App.1990), the affidavit and warrant were essentially the same as those in this case. In *Barnett,* a person not named in the affidavit or warrant drove his vehicle to the residence in question while the search warrant was being executed and a search of his vehicle revealed contraband. In determining that the warrant did not authorize the search in question, the Court stated "that the presence of an automobile on suspected premises, without more, does not give rise to search that automobile." *Barnett,* 788 S.W.2d at 575.

The place named in the search warrant affidavit was "[a] single story brownish colored brick residence located at 805 Sundance, Victoria, Texas ... and any and all outhouses, edifices, structures, openings, enclosures, curtilage and vehicles at said suspected place." The affiant's probable cause was that a confidential informant told him that marihuana was being sold from "the suspected place." In his testimony at the hearing on the motion to suppress the officer's only testimony concerning the information relating to the informer's information was that "marijuana was being dealt out of that residence." While the evidence concerning whether the officers set up their surveillance of the residence before or after obtaining the warrant was conflicting, there was no question that they had the premises under surveillance between an hour and an hour and one-half after obtaining the warrant, and there were no vehicles at the residence until only a few minutes before the warrant was executed. There was also no question but that the officers did not see the vehicle in question arrive at the premises nor did they see anyone get into or exit the vehicle. The evidence also showed that at the time the officers searched the vehicle they had no information about its ownership. The officer testified that he determined the ownership of the vehicle "at a later date." The State's second point is overruled. Because we find *Barnett* controlling, we affirm the trial court's order.

NYE, C.J., dissenting.

FEDERICO G. HINOJOSA, Jr., J., not participating.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority holds that the search of Kimberly Bassano's Oldsmobile exceeded the scope of the search warrant which validly authorized the search of the Bassano residence. Under the facts and circumstances of this case, I would hold that the search was not unreasonably broad in its scope. I would reverse the trial court's judgment and remand the case for trial.

The test applying to searches outside the scope of a search warrant is whether the search was unreasonable, since the Fourth Amendment of the United States Constitution and art. 1, § 9 of the Texas Constitution forbid only unreasonable searches. *Cannady v. State*, 582 S.W.2d 467, 469 (Tex.Crim.App.1979). What is reasonable within the meaning of the Fourth Amendment depends on the facts and circumstances of each case. *Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 789, 17 L.Ed.2d 730 (1967); *Long v. State*, 532 S.W.2d 591, 596 (Tex.Crim.App.1975), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 179 (1976).

The task of the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. *Johnson v. State*, 803 S.W.2d 272, 288 (Tex. Crim.App.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). When facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a man of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, probable cause exists to issue a warrant to search that place. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim.App.1986); *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex.Crim.App.1982). A search-warrant affidavit must be read in a common-sense, realistic manner, and reasonable inferences may be drawn from the facts and circumstances contained within its four corners. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); *Cassias*, 719 S.W.2d at 587–88; *Lopez v. State*, 535 S.W.2d 643, 647 (Tex.Crim.App.1976).

In the present case, the warrant affidavit stated, in pertinent part:

THERE IS IN VICTORIA COUNTY, TEXAS, A SUSPECTED PLACE DESCRIBED AND LOCATED AS FOLLOWS: A single story brownish colored brick residence located at 805 Sundance, Victoria, Texas ... and any and all outhouses, edifices, structures, openings, enclosures, curtilage and vehicles at said suspected place.

SAID SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS, HEREAFTER CALLED "SUSPECTED PARTY", WHETHER ONE OR MORE: Joe, a white male, who appears to be in his twenties. Kim, a white female, who appears to be in her twenties and person or persons unknown to affiant.

IT IS THE BELIEF OF AFFIANT, AND AFFIANT HEREBY CHARGES AND ACCUSES THAT SAID SUSPECTED PARTY HAS POSSESSION OF AND IS CONCEALING AT SAID SUSPECTED PLACE IN VIOLATION OF THE LAWS OF THE STATE OF TEXAS THE FOLLOWING PERSONAL PROPERTY: Marijuana....

. . . . .

Your affiant [Officer Turner] was contacted by a confidential informant, and was advised by said confidential informant, that said confidential informant travelled to the suspected place [the house on 805 Sundance Street] within the past 48 hours and personally observed a useable amount of marijuana purchased by a second party from within the suspected place from the suspected parties. The confidential informant advised that the suspected parties are selling marijuana in various amounts and at various prices from within the suspected place. The confidential informant has personal knowledge of marijuana, and is aware of its appearance, effects on the human body, and common sales activity. The confidential informant has proven to be reliable and credible and has provided information to your affiant in the past concerning illegal drug activity in Victoria County, Texas. The information provided by the confidential informant has led to seizures of illegal drugs and felony drug arrests....

The motion to suppress alleged that because the informant did not tell Officer

Turner about Kimberly Bassano's Oldsmobile (the car that was searched) and did not give him any reason to believe that any vehicles located at appellee's house contained contraband, probable cause did not exist to support the search of the Oldsmobile. The search warrant commanded "the Sheriff or any Peace Officer of Victoria County, Texas, or any Peace Officer of The State of Texas" "to enter the suspected place" described as "a ... residence located at 805 Sundance, Victoria, Texas[,] and any and all outhouses, edifices, structures, openings, enclosures, curtilage and vehicles described place and premises" "to there search for the property [marihuana]" and "to seize same and to arrest and bring before me each suspected party" described as "Joe, a white male, who appears to be in his twenties. Kim, a white female who appears to be in her twenties. And person or persons unknown to your affiant."

The Court of Criminal Appeals has already addressed this issue in *Long v. State* and *Keen v. State*, 626 S.W.2d 309 (Tex. Crim.App.1981). In *Long*, a search warrant commanded the sheriff to enter and search the suspected place described in the affidavit. The "suspected place" was described in the warrant as a white-frame house with gray trim and a yellow and black school bus. The warrant *did not* contain the phrase "including all other structures, vehicles, and places on the premises" (the Court said that if it had, the defendant's complaint would lack merit). Police executed the warrant and found marihuana in the house, school bus, and in a two-wheel trailer, which was located about 250 feet from the house. On appeal, the defendant attacked the search of the two-wheel trailer. The Court upheld the search and said that the "suspected place" was the farmstead, not simply the house. The Court also said that only after contraband had been found in the bus and house was the scope of the search widened to the two-wheel trailer, which was within the farmstead's curtilage.

In *Keen*, a search-warrant affidavit stated that a search would include a residence, all motor vehicles, and outbuildings appurtenant to the residence. The affidavit also stated that the suspect used different vehicles to transport marihuana to and from the residence. Officers executed the warrant and found marihuana in the residence and in the trunks of two cars, which were parked 75 feet from the home, but apparently on the defendants' property. On appeal, the defendants argued that the affidavit did not contain enough information to form probable cause for the search of the trunks of the two cars. Relying on *Long*, the Court upheld the search and said that the warrant was properly executed and that the search was extended to the cars only after officers found marihuana inside the residence.

In the present case, the sheriff's department supplementary report, which was admitted into evidence, showed that the search warrant was executed at 6:33 p.m. Seven minutes later, Captain Ratcliff found a cardboard box containing suspected marihuana residue inside the kitchen refrigerator of the house. Five minutes after that, police searched Kimberly Bassano's Oldsmobile, which was parked on the curtilage (driveway) at the time of the search. Police found marihuana on the console and in the trunk. Once police found marihuana in the Bassano residence, the search was properly extended to Kimberly's Oldsmobile. *See Keen*, 626 S.W.2d at 313; *Long*, 532 S.W.2d at 596.

The majority relies on *State v. Barnett* to support their conclusion that the search of Kimberly Bassano's Oldsmobile was unreasonably broad in scope. In *Barnett*, the police executed a search warrant for drugs at the home of Paula Byrd. Forty-five minutes after the start of the search, Barnett, who was neither an occupant of the residence nor a person named in the search warrant, drove up and was immediately arrested. The police officers searched his car and found a quantity of drugs. The Court of Criminal Appeals held that the mere presence of an automobile on the suspected premises, without more, did not authorize its search by the police. *Barnett*, 788 S.W.2d at 575. The Court also held that the phrase "all vehicles" did not meet the constitutional standard of particu-

larity required in describing the suspect premises. *Barnett,* 788 S.W.2d at 577. However, the Court also suggested that this general term may, at least in some situations, suitably specify the place which police may search. *Id.*

*Barnett* is directed to a third party, not named in the search warrant, who came onto the premises during a search. In the present case, the affidavit alleged that the suspected parties (Joe and Kimberly Bassano) were in charge of and controlled the house on 805 Sundance Street. The object of the search was marihuana, allegedly possessed by the suspected parties. The Oldsmobile belonged to Kimberly Bassano, and the police knew that she and appellant sold drugs from the residence. Logically, the marihuana had to have been transported to the residence in some manner. Based upon these allegations, a magistrate could have reasonably inferred that the suspected parties may well have kept the contraband somewhere on the premises named in the warrant or within their own property, including Kimberly Bassano's Oldsmobile. A warrant affidavit need not furnish probable cause to establish an exact position for the object of the search; it need only reflect probable cause to search the general location, including automobiles parked in the garage and on the premises. *Bower v. State,* 769 S.W.2d 887, 905 (Tex.Crim.App. 1989), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

The majority points out that the police did not know that the Oldsmobile belonged to Kimberly Bassano until after completion of the search. Once again, the Oldsmobile was not searched until after suspected marihuana was found inside the residence. When police have probable cause to believe that contraband is on the premises which are under the control of the person named in the search warrant, all of that person's property is subject to a search as long as it is on the curtilage and might contain the object of the search. The vehicle was community property. Automobiles and other vehicles usually may be searched without a warrant when probable cause exists to believe that contraband is aboard. *See Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). I would reverse the trial court's judgment and remand the case for trial.